FILED
2016 Jan-05  PM 02:03
U.S. DISTRICT COURT
N.D. OF ALABAMA

# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ALABAMA
## EASTERN DIVISION

| | |
|---|---|
| **KENNETH WAYNE PATTON,** | ) |
| | ) |
| **Plaintiff,** | ) |
| | ) |
| **v.** | ) **Case No.: 4:15-CV-540-VEH** |
| | ) |
| **ETOWAH COUNTY, ALABAMA,** | ) |
| **TODD ENTREKIN, JONATHAN** | ) |
| **SHADWRICK, SCOTT HASSELL,** | ) |
| **and MIKE O'BRYANT,** | ) |
| | ) |
| **Defendants**. | ) |

## MEMORANDUM OPINION AND ORDER

This is an action under 42 U.S.C. § 1983 alleging that Plaintiff Kenneth Wayne Patton's ("Patton") constitutional rights were violated while in custody at the Etowah County Detention Center ("ECDC"). Pending before the court are two motions to dismiss Patton's Amended Complaint. (*See* docs. 21 & 23). The first is by Defendant Jonathan Shadwrick ("Shadwrick"), doc. 21, the second by Defendants Scott Hassell ("Hassell"), Mike O'Bryant ("O'Bryant"), and Todd Entrekin ("Entrekin") (collectively, "Supervisors"). (Doc. 23). The second motion will be **GRANTED** and the complaint dismissed as to Hassell, O'Bryant, and Entrekin, but the claim against Shadwrick will survive. Accordingly, his motion will be **DENIED**.

## I. **Factual and Procedural Background**

Since this is a motion to dismiss, all of the facts alleged in the complaint are taken to be true. *See Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 556 (2007). The parties in the case are Patton, a man who was assaulted while in custody at the ECDC, doc. 20, ¶ 4, Entrekin, who was the Etowah County Sheriff at the time of the events described in the complaint, *id.*, ¶ 5, Hassell, Chief Deputy of Detention at the ECDC, *id.*, ¶ 6, O'Bryant, who was a Compliance Sergeant at the ECDC, *id.*, ¶ 7, and Shadwrick, the booking deputy at the ECDC. (*Id.*, ¶ 8). All defendants are sued in their individual capacities only, *id.*, ¶¶ 4–8, and Entrekin, Hassell, and O'Bryant are alleged to have been responsible for the promulgation and enforcement of policy at the ECDC and its management. (*Id.*, ¶ 4–7).

Patton was arrested on April 9, 2013 for a domestic violence offense and was brought to the ECDC for booking. (*Id.*, ¶ 9). While being booked, Patton twice informed Shadwrick that he was a correctional officer and requested protective custody through administrative segregation; i.e., segregation from the ECDC's general population. (*Id.*, ¶¶ 10 & 12). Hassell authored the ECDC's Policy and Procedure ("The Policy") governing administrative segregation of certain inmates, including for the inmate's safety, and this policy binds all members of the ECDC staff. (*Id.*, ¶¶ 13–17). The Policy indicates law enforcement officers may qualify

2

for administrative segregation, but before a detainee may be placed in segregation, the Officer in Charge and Classification Sergeant are to review the case to determine whether it is warranted. (*Id.*, ¶¶ 18 & 20–21). No such review was conducted in Patton's case. (*Id.*, ¶ 19).

At the time of booking, Patton was intoxicated, verbally abusive, and directed profanity at ECDC personnel and certain inmate workers, Denzil Beck ("Beck") and Henry Kicklighter. (*Id.*, ¶ 22). Specifically, Patton referred to them as "f***boys." (*Id.*, ¶ 23). Thereafter, Shadwrick placed Patton into holding cell #7 with Moses Reyes, who was known to Shadwrick to have violent propensities. (*Id.*, ¶¶ 24–27). Shadwrick intended the placement in holding cell #7 to punish Patton for his disorderly conduct and foul language. (*Id.*, ¶ 33).

After his placement in holding cell # 7, Beck punched his fist into his hand to signal to Reyes to attack Patton; he did so in clear sight of Shadwrick. (*Id.*, ¶ 35). In short order, an argument ensued between Patton and Reyes that steadily escalated, and despite overhearing the commotion, Shadwrick did not remove Patton from the cell. (*Id.*, ¶ 38). Reyes then began to beat Patton, and Shadwrick delayed calling emergency personnel to stop the beating. (*Id.*, ¶ 39). As a result of the beating, Patton suffered cuts and lacerations to his face, a broken tooth and nose, and he required surgery. (*Id.*, ¶ 41). He also suffered unnecessary pain and

3

suffering and mental distress. (*Id.*).

The complaint further alleges that Entrekin, Hassell, and O'Bryant ratified and approved Shadwrick's conduct because they failed to discipline him after an internal investigation. (*Id.*, ¶ 42). Patton further asserts that Shadwrick's conduct was consistent with a de facto jail policy of failing to administratively segregate and provide protective custody to corrections officers who are threatened by other inmates which is evidenced by internal investigations, documents, inmate disciplinary reports, and statements from ECDC personnel that they regularly failed to segregate detainees who requested protective custody. (*Id.*, ¶ 42–45).

## II. <u>Discussion</u>

42 U.S.C. § 1983 provides a cause of action for individuals whose constitutional rights are violated under color of state law. Relevant here, a detainee pleads a violation of his Fourteenth Amendment rights[1] when the complaint reflects 1) a substantial risk of bodily harm to the prisoner, 2) that the defendants were deliberately indifferent to that risk, and 3) their deliberate indifference caused the plaintiff's harm. *Goodman v. Kimbrough*, 718 F.3d 1325, 1331 (11th Cir.

---

[1] Where the inmate is merely detained pretrial, rather than pursuant to a lawful sentence, it is the Fourteenth Amendment, rather than the Eighth, that provides protection for the prisoner against deliberate indifference by prison officials to a substantial risk of bodily harm. *Compare Cottone v. Jenne*, 326 F.3d 1352, 1358 (11th Cir. 2003) (pretrial and Fourteenth Amendment), *with Estelle v. Gamble*, 429 U.S. 97, 104 (1976) (post-conviction and Eighth Amendment).

2013). As to the second element, deliberate indifference, the plaintiff must allege facts showing that 1) the defendants were subjectively aware of the substantial risk of bodily harm, 2) they disregarded that risk, and 3) their disregard was more than negligent. *Id.* at 1331–32.

It is well-established that a section 1983 action for violation of the Eighth and/or Fourteenth Amendment will lie when a prison official was subjectively aware of a substantial risk that one prisoner would injure another, yet the prison official failed to act to prevent the injury. *Cf. Farmer v. Brennan*, 511 U.S. 825, 833 (1994) (announcing the rule in the context of a *Bivens* action).[2] But the heavy lifting, for the prisoner, is in showing that the defendant was indeed subjectively aware of the risk. *See id*. at 837–38.

In pleading the elements of a section 1983 action, and indeed any action, the plaintiff must make  "a short and plain statement of the claim showing that the pleader is entitled to relief," FED R. CIV. P. 8(a)(2), that "give[s] the defendant fair notice of what the ... claim is and the grounds upon which it rests." *Twombly*, 550 U.S. 544 at 555 (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). When the complaint is attacked by a motion under Rule 12(b)(6), the factual allegations must

---

[2] "[A] *Bivens* action is the federal analog to suits brought against state officials under [42 U.S.C. § 1983]." *Hartman v. Moore*, 547 U.S. 250, 264 n. 2 (2006).

5

"raise a right to relief above the speculative level," and the complaint must contain more than "a formulaic recitation of the elements of a cause of action" or "labels and conclusions." *Twombly*, 550 U.S. at 555 (citations omitted). More to the point, stating a claim requires a "complaint with enough factual matter (taken as true)," *id.* at 556, to <u>plausibly</u> suggest that the plaintiff is entitled to relief—not merely (on some conceivable set of facts) <u>possibly</u> entitled to relief. *See id.* at 557–58.

Notwithstanding the Supervisors' suggestion to the contrary, "[a]fter *Iqbal* it is clear that there is no 'heightened pleading standard' as it relates to cases governed by Rule 8(a)(2), including civil rights complaints." *Randall v. Scott*, 610 F.3d 701, 710 (11th Cir. 2010). So *Twombly and Iqbal* are all that matters, and they require a court ruling on a motion to dismiss to undergo a two-step analysis, wherein the court separates the complaint's wheat from its chaff. First, the "complaint's conclusory legal allegations" must be discarded, and, second, the well-pleaded factual allegations are examined to determine whether—when accepted as true—they "plausibly give rise to an entitlement to relief." *Iqbal*, 556 U.S. at 679. "Conclusory legal allegations" include "formulaic recitations of the elements of a cause of action" and "naked assertions devoid of further factual enhancement." *Id.* at 678.

6

A. <u>The Claim Against Shadwrick Survives</u>

Shadwrick's motion to dismiss alleges three grounds for dismissal: 1) the complaint fails to plead sufficient facts to satisfy Rule 8 in light of *Twombly* and *Iqbal*; 2) Shadwrick is entitled to Qualified Immunity; and 3) in any event, Shadwrick did not violate Patton's constitutional rights. None of these arguments are meritorious.

i. The *Twombly*/*Iqbal* Objection Fails

Patton's factual allegations clearly describe a violation by Shadwrick of his Fourteenth Amendment rights, so Shadwrick's *Twombly*/*Iqbal* objection fails. Discarding the complaint's chaff (legal conclusions and naked assertions), as *Iqbal* requires, the following allegations remain: First, Shadwrick was twice informed that Patton was a corrections officer, which meant he was eligible for administrative segregation.[3] Second, Shadwrick placed Patton into a cell with an inmate Shadwrick knew had violent propensities. Third, Shadwrick observed an inmate, Reyes—who Patton had previously insulted—make a threatening gesture

---

[3] Although Patton makes much of the fact that the ECDC's internal policies were violated, it is unclear, and he has cited no authority for guidance, how the failure to follow internal procedures affects the Eighth or Fourteenth Amendment calculus. If anything, the court is of the opinion that such behavior is merely (and, really, only a little) <u>probative</u> of a prison official's deliberate indifference, but it is not sufficient in itself to violate the Eighth or Fourteenth Amendments. There is a difference between a failure to behave prudently—one might call it acting negligently—and the deliberate indifference required by the Supreme Court.

about Patton to Reyes. Fourth, Shadwrick was aware of Patton's beating at the hands of Reyes, but he purposefully delayed in calling for emergency assistance. Taken together, these allegations show that Shadwrick was aware of a risk that Patton would be attacked, because Shadwrick knew that Patton was part of a class of persons eligible for administrative segregation (a fact that is at least marginally probative of a known risk of injury to Patton), Shadwrick knew Reyes had violent propensities, and Shadwrick saw Beck threaten Patton. By far the most important factor, however, is that Shadwrick observed Patton being beaten and <u>intentionally</u> delayed in calling for emergency assistance to stop the beating. If that is not deliberate indifference to a substantial risk of bodily harm, then nothing is.

ii. Patton's Constitutional Rights Were Violated

Because determining that Shadwrick is not entitled to qualified immunity necessarily requires finding that Patton's constitutional rights were violated, *see Behrens v. Pelletier*, 516 U.S. 299, 305 (1996) (government agents shielded from liability unless they violate an individual's clearly established constitutional rights), the court will consider this issue first, and then proceed to the qualified immunity analysis.

As stated earlier, a prison official "must take reasonable measures to guarantee the safety of inmates," *Farmer*, 511 U.S. at 832, and this includes "a

8

duty to protect prisoners from violence at the hands of other prisoners." *Id.* at 833 (citation omitted). This duty is breached when the prison official is deliberately indifferent to a prisoner's substantial risk of bodily harm, thereby violating the prisoner's Eighth and/or Fourteenth Amendment rights. *See id.* at 828. Deliberate indifference requires a subjective awareness of the risk of harm. *See id.* at 837.  In the complaint, Patton alleges that Shadwrick was aware that Reyes was beating Patton, but Shadwrick intentionally delayed calling for assistance. Beyond being subjectively aware of a <u>risk</u> of harm, Shadwrick was subjectively aware of <u>ongoing</u> harm, yet he delayed in calling for assistance. Taking the allegation as true, the complaint clearly states a violation of Patton's Fourteenth Amendment rights.

### iii. Shadwrick is Not Entitled to Qualified Immunity at this Stage

"Qualified immunity offers complete protection for individual public officials performing discretionary functions 'insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" *Sherrod v. Johnson*, 667 F.3d 1359, 1363 (11th Cir. 2012) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)). Subsumed within this standard are two questions: first, whether the official was acting in his discretionary capacity, and, second, whether the federal law he has violated was clearly established. The parties do not appear to dispute that Shadwrick was acting

9

in his discretionary capacity, so the only issue is whether the a prison official's deliberate indifference to the threat of violence against an inmate violates clearly established law.

Law is clearly established where it is "earlier developed in such a concrete and factually defined context to make it obvious to all reasonable government actors, in the defendant's place, that what he is doing violates federal law." *Lassiter v. Alabama A & M Univ. Bd. Of Trustees*, 28 F.3d 1146, 1149 (11th Cir. 1994) (en banc) (internal quotation marks omitted). Here, the Courts of Appeal—and the Supreme Court—are unanimous in their condemnation of a prison official acting with deliberate indifference to the risk of an inmate's harm at the hands of a fellow prisoner. *Farmer*, 511 U.S. at 833. When the Supreme Court speaks directly to an issue, the law is as clearly established as it could possibly be. *Cf. Ashcroft v. al-Kidd*, 131 S.Ct. 2074, 2085 (2011) ("Qualified immunity gives government officials breathing room to make reasonable but mistaken judgments about open legal questions.") (emphasis added).

Of course, discovery may reveal that none of these allegations are true, but that is an issue for summary judgment or trial, not a motion to dismiss, where well-pleaded factual allegations must be taken as true. At this stage, the motion to dismiss as to the claims against Shadwrick must be denied.

10

### B. The Claims Against Entrekin, Hassell, and O'Bryant ("Supervisors") Fail

Like Shadwrick's motion to dismiss, the Supervisors' motion to dismiss alleges three grounds for dismissal: 1) the complaint fails to plead sufficient facts to satisfy Rule 8 in light of *Twombly* and *Iqbal*; 2) the Supervisors are entitled to Qualified Immunity; and 3) in any event, they did not violate Patton's constitutional rights. Because the court concludes that the complaint fails to allege sufficient facts to establish that the Supervisors violated Patton's constitutional rights, there is no need to consider whether his rights were *actually* violated by the Supervisors, nor whether they would be entitled to qualified immunity.

Here, the chief allegations against the Supervisors are that Hassell authored the ECDC policy that made Patton eligible for administrative segregation, doc. 20, ¶ 17, they ratified Shadwrick's conduct by failing to discipline him when his conduct was consistent with a *de facto* jail policy of failing to administratively segregate and provide protective custody to corrections officers and detainees who are threatened by other inmates, *id.*, ¶ 42, they similarly ratified Shadwrick's conduct when he behaved consistently with a *de facto* policy of punishing disruptive pretrial inmates, *id.*, ¶ 43, they ratified Shadwrick's and Reyes's conduct by refusing to prosecute Shadwrick and Reyes after an internal investigation, *id.*, ¶ 44, and they were aware through internal investigations, documents, inmate

disciplinary reports, and statements from ECDC personnel that the ECDC regularly failed to segregate detainees who requested protective custody. (*Id.*, ¶ 45).

Further, they were aware that correction officers are at substantial risk of bodily harm from other inmates, *id.*, ¶ 46, that Shadwrick would violate federal law by not segregating inmates, *id.*, ¶ 47, and they regularly failed to discipline correction officials in response to "known incidents" of failing to segregate inmates. (*Id.*, ¶ 48).These factual allegations culminate in assertions that the Supervisors permitted, encouraged, and ratified a pattern or practice of failing to provide protective custody through administrative segregation for correctional officers who request it or are threatened by other inmates. (*Id.*, ¶¶ 54–55).

The most critical point of law in this case is that there is no supervisory liability under section 1983 under a theory of r*espondeat superior*. *Iqbal*, 556 U.S. at 676. Rather, the officials' individual actions must violate the constitution; *id.*, [s]upervisory liability lies where the defendant personally participates in the unconstitutional conduct or there is a causal connection between such conduct and the defendant's actions." *Harper v. Lawrence County*, 592 F.3d 1227, 1236 (11th Cir. 2010). Such a causal connection may be established in one of three ways: 1) "when a history of widespread abuse puts the responsible supervisor on notice of the need to correct the alleged deprivation, and he fails to do so;" 2) "the

supervisor's custom or policy... result[s] in deliberate indifference to constitutional rights;" or 3) "when facts support an inference that the supervisor directed the subordinates to act unlawfully or knew that the subordinates would act unlawfully and failed to stop them from doing so." *Id.* It appears that Patton alleges the Supervisors' conduct satisfies all three of these alternative criteria, but the complaint fails to satisfy Rule 8(a)(2).

Essentially, all of Patton's allegations that the Supervisors ratified Shadwrick's conduct or knew of his proclivity to violate prisoner's constitutional rights are legal conclusions, since they are not supported by factual allegations. *Iqbal* requires that legal conclusions be ignored, so this knocks out paragraphs 42–44, 47, and 54–55. Paragraph 45 appears designed to buttress a claim of widespread abuse, and disparate references to the jail's *de facto* policies violating prisoner's constitutional rights are evocative of a claim that the officials instituted a custom or policy in violation of prisoners' constitutional rights. Alas, Patton's "widespread abuse" and "custom or policy" nexuses are also so devoid of factual enhancement that they are due to be ignored.

*Iqbal* itself brings into sharp relief the factual deficiency of the complaint. There, the plaintiff alleged that the defendants "'knew of, condoned, and willfully and maliciously agreed to subject [him]' to harsh conditions of confinement 'as a

matter of policy, solely on account of [his] religion, race, and/or national origin and for no legitimate penological interest.'" 556 U.S. at 680. The Court concluded that "[t]hese bare assertions" should be treated like a "formulaic recitation of the elements of a constitutional" violation claim, and accordingly are not presumed to be true. *Id.* at 681.

The complaint in this case alleges that "Intentionally or with deliberate indifference, defendants Entrekin, Hassell, and O'Bryant permitted, encouraged and ratified a pattern or practice for failing to provide protective custody," doc. 20, ¶¶ 54–55, "through administrative segregation for correctional officers who request such protection" *id.*, ¶ 54, and "to inmates who are threatened by other inmates at the ECDC." (*Id.*, ¶ 55). These claims are supported by allegations that Shadwrick was not disciplined because "his conduct was consistent with a de facto jail policy of punishing pretrial inmates that allegedly display disorderly conduct and use foul language" and "of failing to administratively segregate and provide protective custody to corrections officers and detainees who are threatened by other inmates." (*Id.*, ¶¶ 42–43 (not italicized in original)). These allegations are not, in any meaningful way, better supported than those in *Iqbal* and are therefore not entitled to a presumption of truth. As such, there are no facts remaining to support a claim that the Supervisors instituted a custom or policy violating Patton's constitutional

14

rights.

The widespread abuse theory satisfies the requirement that an official be subjectively aware of the risk of harm to a prisoner, because it "impute[s]" constructive knowledge of the risk "to the supervisory official." *Bowen v. Watkins*, 669 F.2d 979, 988 (5th Cir. 1982). Thus, the allegations of widespread abuse must be particular enough to raise an inference of the Supervisor's subjective knowledge "above the speculative level," *Twombly*, 550 U.S. at 555, to plausibly state a claim and thereby survive a motion to dismiss. The allegations in this case are too perfunctory to create a plausible inference that the Supervisors were deliberately indifferent to widespread and recurring harm.

Patton's claim that the Supervisors were "aware through internal investigations, documents, inmate disciplinary reports, and statements from ECDC personnel that the ECDC regularly failed to segregate detainees who requested protective custody," doc. 20, ¶ 45, is a naked assertion that this kind of incident has occurred before, notably unsupported by mention of a single other incident. *Cf. West v. Tilman*, 496 F.3d 1321, 1329 (11th Cir. 2007) ("The deprivations that constitute widespread abuse sufficient to notify the supervising official must be obvious, flagrant, rampant and of continued duration, rather than isolated occurrences."). At bottom, the allegations supporting Patton's widespread abuse

15

claim amount to a very long-winded way of saying that "there is widespread abuse in the jail." However, "courts are not bound to accept as true a legal conclusion couched as a factual allegation." *Twombly*, 550 U.S at 555 (citation and internal quotation marks omitted).

Finally, embedded within his other allegations, it appears that Patton argues that a supervisor's failure to punish a subordinate's unconstitutional conduct is sufficient to establish that the supervisor ratified the subordinate's actions. (*See, e.g.*, doc. 20, ¶¶ 43–44). But this does not appear to be the law, because the Supervisors must "<u>cause</u> the constitutional violation; that is, [they] must officially sanction or order the action. " *Salvato v. Miley*, 790 F.3d 1286, 126 (11th Cir. 2015) (citations and internal quotation marks omitted) (emphasis added). Where the alleged ratification is premised upon "a single incident," the plaintiff "must demonstrate that local policymakers had an opportunity to review the subordinate's decision and agreed with both the decision and the decision's basis." *Thomas ex rel. Thomas v. Roberts*, 261 F.3d 1160, 1174 n. 12 (11th Cir. 2001), *cert. granted, judgment vacated sub nom. Thomas v. Roberts*, 536 U.S. 953 (2002), *opinion reinstated*, 323 F.3d 950 (11th Cir. 2003).

Awareness of the constitutional violation coupled with a failure to punish after the fact is insufficient, *cf. Salvato*, 790 F.3d at 1295 (awareness of the

16

violation coupled with a failure to investigate after the fact is insufficient), and Patton has not alleged that the Supervisors approved Shadwrick's action <u>before</u> he took it. Holding the Supervisors liable purely for a failure to discipline "would result in *de facto respondeat superior* liablility," *City of Canton, Ohio, v. Harris*, 489 U.S. 378, 392 (1989), and that result is forbidden.

## III. <u>Conclusion</u>

The allegations against Shadwrick easily satisfy *Twombly* and *Iqbal*, and Patton's right to be free from deliberate indifference to his safety, which Shadwrick violated, is clearly established. Shadwrick's motion to dismiss is therefore **DENIED**. As to Patton's claims against Entrekin, Hassell, and O'Bryant, *Twombly* and *Iqbal* prohibit his conclusory allegations from surviving the Supervisors' motion, so it is **GRANTED.**

**DONE** and **ORDERED** this 5th day of January, 2016.

**VIRGINIA EMERSON HOPKINS**
United States District Judge